UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANTHONY DEWAYNE COMPTON, JR.,

                     Plaintiff,

v.                                                Case No. 22-cv-497-pp

CO TOLER, CHERYL EPLETT,
JAMES ZANON, EMIL TONEY,
CAPT. E. NORMAN, CAPT. ERIC HENSLIN,
LT. NIKKI SCHWEBKE, SARAH FELTES,
and HEATH TOMLIN,

                     Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 6) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

      Anthony DeWayne Compton, Jr., who is incarcerated at the Oshkosh Correctional Institution and who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. Dkt. No. 1. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 6, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds

1

exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On May 4, 2022, the court ordered the plaintiff to pay an initial partial filing fee of $8.85. Dkt. No. 8. The court received that fee on May 23, 2022. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

   A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated plaintiffs seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to

2

relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The plaintiff alleges that on January 16, 2021, he had been sent to the Restrictive Housing Unit (RHU) for thirty days for disruptive conduct (which he indicates was "horse playing"). Dkt. No. 1 at 1. On February 2, 2021, defendant Correctional Officer Toler allegedly touched the plaintiff inappropriately by "putting his finger in the crack of [the plaintiff's] rear end" when escorting the plaintiff to the showers. Id. The plaintiff states that five days later, he

3

submitted a grievance about the incident, which he says was received by the prison administration. Id. at 2. Nine days after that, defendant Security Director Emil Toney allegedly wrote the plaintiff a major conduct report for lying about an employee and defendant Captain Eric Henslin signed off on it. Id.

The plaintiff alleges that on February 17, 2021—the day after he received the conduct report—defendant Captain E. Norman called him to the unit manager's office and asked him, "Did you write that report?" Id. The plaintiff says that Norman went on to say that if the plaintiff didn't write it, Norman "would get rid of it right now." Id. The plaintiff says he told Norman that he wrote the report and that he stood by it. Id. The plaintiff says that after a "brief conversation," Norman told the plaintiff that defendant Deputy Warden James Zanon wanted to give the plaintiff sixty days of disciplinary separation for lying about an employee; the plaintiff says that Norman indicated that he was going to have a conversation with Zanon and get back to the plaintiff. Id.

Later that day, Norman allegedly called the plaintiff back to the office and again told him that Zanon wanted to give him sixty days disciplinary separation time for lying about an employee. Id. Norman then allegedly said, "I talked to Zanon about our earlier conversation and told him that you may have been mistaken, and now he wants to offer you 7 days disciplinary separation time." Id. The plaintiff states that he did not give Norman any inclination that he was mistaken. Id. He also says that he believed "the Administration" was trying to intimidate and manipulate him to get him to say he was lying about

4

Toler "in order to suppress the situation." Id. The plaintiff says that he refused to admit to "lying on Toler." Id.

In preparation for the disciplinary hearing, the plaintiff allegedly requested that video footage be made available, and that nursing staff be involved. Id. The plaintiff wanted nursing staff involved in the hearing because "[t]here was an argument by Norman and others from the Administration that they couldn't tell where Toler's hand was on [the plaintiff's] body because of the length of the clothing [the plaintiff] was wearing." Id. To challenge this theory, the plaintiff asked to have nursing staff attest to where his waistline started relative to his elbows, "because in the video footage Toler had positioned his hand considerably lower than [the plaintiff's] elbows and directly in the center of his body." Id. at 2-3. Defendant Captain Henslin allegedly denied the plaintiff's request for nursing staff involvement because the plaintiff did not specify a nurse by name, which the plaintiff states is absurd because not many incarcerated persons know the nursing staff by name. Id. at 3. The plaintiff alleges that not allowing nursing staff to be involved denied him his due process right to have a fair defense when challenging the conduct report. Id.

The plaintiff alleges that Lieutenant Nikki Schwebke and Heath Tomlin led the conduct report hearing, which took place on March 1, 2021. Id. "Despite watching the video footage and seeing the officer's hand exactly where [the plaintiff] has accused it to be, and agreeing with [the plaintiff] that the officer's hand was considerably lower than his elbows, the hearing committee

5

still moved to punish [the plaintiff]." Id. He states that he was punished with ten days disciplinary separation time in the RHU. Id.

The plaintiff states that when he returned to the RHU, he was placed on the same wing where Toler regularly worked. Id. He alleges that Toler began to verbally harass him, refused him opportunities to shower or go to recreation and threatened to withhold a meal because the plaintiff wouldn't verbally acknowledge him. Id. The plaintiff states that he refused to engage or respond to these provocations; he alleges that he wrote to Norman and asked to be moved because of Toler's harassment and that he *was* moved to the opposite wing of the RHU where Toler did not regularly work. Id. But the plaintiff states that after he moved, Toler showed up to his door and continued to harass him. Id. He says that Toler's actions were unnecessary and that he believes they were retaliatory. Id.

The plaintiff allegedly exhausted his administrative remedies at the institution, where Zanon denied his appeal. Id. He states that when his appeal reached Madison, an individual from the Office of the Secretary of the Department of Corrections "contacted the Warden at OSCI Cheryl Eplett, the PREA Director at OSCI Sarah Feltes and the DAI Administrator Sarah Cooper, and within their meeting there was sufficient evidence found to support [the plaintiff's] claims, and Warden Eplett moved to dismiss [the plaintiff's] major conduct report for lying about an employee in full." Id.

The plaintiff states that the only evidence from the incident, the video footage, showed that Toler had positioned his hand beneath the small of the

plaintiff's back "considerably lower than his elbows and directly in the center of his body." Id. He asserts that Toney, the lead Prison Rape Elimination Act coordinator at Oshkosh, reviewed the video footage and saw Toler's hand in an inappropriate area on the plaintiff's body, yet accused and punished the plaintiff instead of reprimanding his officer for violating protocol. Id. The plaintiff states that Toney's actions permitted Toler's behavior and failed to protect the plaintiff, and that Toney "failed to act as the lead PREA coordinator and remedy/prevent a PREA related situation." Id. at 4.

The plaintiff alleges that he reached out to Sarah Feltes "numerous times and she refused to act as the PREA Director she was employed to be." Dkt. No. 1 at 4. Feltes's opinions about the situation allegedly "seemed bias[ed], and her incompetence was unprofessional." Id. The plaintiff states that she could have done more to protect him from being ganged up on by the Administration, but that she refused to get involved. Id.

Finally, the plaintiff alleges that the situation happened on Eplett's watch and that she signed off on documents used to punish him. Id. The plaintiff states that Eplett moved to dismiss the major conduct report only after "Madison" got involved, and that her inactions permitted the officer's and the Administration's actions. Id.

The plaintiff claims that Toler violated his rights under Eighth Amendment and that he wants to "press charges" against Toler for violating

Wis. Stat. §940.29.[1] Id. The plaintiff claims that the other defendants failed to protect him in violation of the Eighth Amendment, suppressed the sexual misconduct and retaliated against him by punishing him for reporting the sexual misconduct. Id. The plaintiff states that he wants the defendants to be held accountable for their actions and that he wants a change in the way incarcerated persons report staff-on-incarcerated-person sexual misconduct so that incarcerated persons report only to an outside source. Id. at 4-5. He also seeks monetary damages. Id. at 5. In addition, the plaintiff states that, "[d]ue to the gravity and the nature of this situation, [he] requests a restraining order against every defendant listed on this complaint and also request[s] that this court order the DOC to laterally transfer [him] to another medium security facility." Id.

C. Analysis

To establish that Toler's conduct violated the plaintiff's Eighth Amendment rights, the plaintiff must show that Toler acted with deliberate indifference to an excessive risk to the plaintiff's health or safety. J.K.J. v. Polk Cty., 960 F.3d 367, 376 (7th Cir. 2020) (sexual assaults that correctional officer committed against incarcerated individuals imposed serious risk to their safety, and officer knew of the danger) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)); see also Washington v. Hively, 695 F.3d 641, 643 (7th Cir. 2012)

---

[1] Section 940.29, a Wisconsin criminal statute, provides: "Any person in charge of or employed in a penal or correctional institution or other place of confinement who abuses, neglects or ill-treats any person confined in or a resident of any such institution or place or who knowingly permits another person to do so is guilty of a Class I felony."

("An unwanted touching of a person's private parts, intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights whether or not the force exerted by the assailant is significant."). The plaintiff's allegations that Toler touched him inappropriately by "putting his finger in the crack of [the plaintiff's] rear end" when escorting the plaintiff to the showers states a claim under the Eighth Amendment and the plaintiff may proceed against Toler in his individual capacity.

The plaintiff cannot "press charges" against Toler for violation of Wis. Stat. §940.29. The executive branch has the "exclusive authority and absolute discretion to decide whether to prosecute cases." United States v. Nixon, 418 U.S. 683, 693 (1974). A private citizen, such as the plaintiff, has no standing to sue based on any interest in the criminal prosecution of another. Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973). The plaintiff may not proceed on a criminal claim against Toler.

The plaintiff also claims that "the rest [of the] defendants [ ] failed to protect [him], took it upon themselves to suppress the sexual misconduct, and moved to retaliate against [him] by punishing him for reporting the sexual misconduct." Dkt. No. 1 at 4. An Eighth Amendment claim that the defendants failed to protect the plaintiff from harm involves an objective component (that the plaintiff was exposed to an objectively serious harm) and a subjective component (that the defendants knew of and disregarded an excessive risk to the prisoner's health or safety). Balsewicz v. Pawlyk, 963 F.3d 650, 654-55 (7th Cir. 2020). Here, the only objective harm the plaintiff has alleged is Toler's

9

sexual misconduct. The plaintiff has not alleged that any of the other defendants knew that Toler might touch the plaintiff inappropriately before the incident, nor has he alleged that Toler engaged in any sexual misconduct after the February 2, 2021 incident. The plaintiff has not stated an Eighth Amendment failure-to-protect claim.

To plead a retaliation claim, the plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." Perez v. Fenoglio, 792 F.3d 768, 783 (7th Cir. 2015) (quoting Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)). The plaintiff's allegation that he filed a grievance about Toler's alleged sexual misconduct satisfies the first element. See Douglas v. Reeves, 964 F.3d 643, 646 (7th Cir. 2020). Regarding the deprivation, the plaintiff alleges that the defendants punished him for filing the grievance: he alleges that Toney and Henslin issued him a conduct report for lying about staff, and that Norman and Zanon encouraged him to withdraw his grievance against Toler or to say that he was mistaken about it. While it is a close call, at this early stage, the court concludes that the plaintiff may proceed on retaliation claim against Toney, Henslin, Norman and Zanon based on his allegations that they retaliated against him for submitting a grievance against Toler.

The plaintiff also alleges that when he returned to the RHU after the disciplinary hearing, Toler began to "verbally harass" him, refused him

10

opportunities to shower or go to recreation and threatened to withhold a meal because the plaintiff wouldn't verbally acknowledge him. Dkt. No. 1 at 3. The plaintiff also alleges that when Norman moved him to the opposite wing of the RHU where Toler did not regularly work, Toler showed up at his door and continued to harass him. Id. While the plaintiff says Toler threatened to withhold a meal because the plaintiff wouldn't verbally acknowledge him, the plaintiff also alleges that he believes Toler's actions were retaliatory. The court will allow the plaintiff to proceed on a retaliation claim against Toler based on allegations that Toler harassed the plaintiff because he filed a grievance against Toler.

The plaintiff has not stated a retaliation claim against the other defendants because he has not "ple[]d[] factual content that allows the court to draw the reasonable inference" that Eplett, Schwebke, Feltes or Tomlin retaliated against him. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The plaintiff has not explained what "led [him] to believe [his] treatment was because of" the protected activity. See Kaminski v. Elite Staffing, Inc., 23 F.4th 774, 777-78 (7th Cir. 2022). The plaintiff's assertion that these defendants wanted to punish him for filing a grievance against Toler relies on speculation and is insufficient. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Next, the plaintiff states that the defendants violated his due process rights because they did not allow nursing staff to be involved at his disciplinary hearing and because Schwebke and Tomlin unreasonably found him guilty after watching the video footage from the incident. An incarcerated person

challenging the process he was afforded in a prison disciplinary proceeding must meet two requirements: (1) he must show that he has a liberty or property interest with which the state has interfered; and (2) he must show that the procedures he was afforded upon that deprivation were constitutionally deficient. Scruggs v. Jordan, 485 F.3d 934, 939 (7th Cir. 2007) (citing Rowe v. DeBruyn, 17 F.3d 1047, 1053 (7th Cir. 1994)).

"A prisoner's liberty interest, and incumbent entitlement to procedural due process protections, generally extends only to freedom from deprivations that 'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prisoner life." Lekas v. Briley, 405 F.3d 602, 608 (7th Cir. 2005) (quoting Sandin v. Conner, 515 U.S. 472, 483-84 (1995)). In the absence of an "atypical and significant" deprivation, the procedural protections of the due process clause are not triggered. Id. Disciplinary segregation can trigger due process protections. Marion v. Columbia Corr. Inst., 559 F.3d 693, 697 (7th Cir. 2009) (citations omitted). When making the determination whether an incarcerated person is entitled to such protections, courts analyze "the combined import of the duration of the segregative confinement and the conditions endured by the prisoner during that period." Id. If conditions in segregation are significantly harsher than those in the normal prison environment, then a liberty interest may arise even when the duration of the segregation, standing alone, would not trigger such an interest. Id. at 697-98. On the one hand, "six months of segregation is not such an extreme term and, standing alone, would not trigger due process rights." Id. at 698 (quoting

Whitford v. Boglino, 63 F.3d 527, 533 (7th Cir. 1995)). On the other end of the spectrum, transfer to a maximum-security prison and placement in segregated confinement for an indefinite duration where virtually all sensory and environmental stimuli are denied, little human contact is permitted, and prisoners otherwise eligible for parole are disqualified from parole eligibility, taken together, impose an atypical and significant hardship within the correctional context. Id. at 697 (citing Wilkinson v. Austin, 545 U.S. 209, 224 (2005)).

The plaintiff alleges that he was punished with ten days disciplinary separation time in the RHU. This short disciplinary sentence, without more, does not implicate the plaintiff's rights under the due process clause. See Marion, 559 F.3d at 698. The plaintiff has not stated a due process claim.

Finally, to the extent the plaintiff claims that the defendants violated prison policies or procedures, he has not stated a claim for relief under §1983. A violation of state laws or regulations is not a basis for a federal civil rights case. See Williams v. Mierzejewski, 401 F. App'x 142, 144 (7th Cir. 2010) (citing Guajardo-Palma v. Martinson, 622 F.3d 801, 806 (7th Cir. 2010); Domka v. Portage Cty., Wis., 523 F.3d 776, 784 (7th Cir. 2008)).

The plaintiff may proceed on an Eighth Amendment claim against Toler based on allegations that Toler touched him inappropriately by "putting his finger in the crack of [the plaintiff's] rear end" when escorting the plaintiff to the showers; a retaliation claim against Toler for allegedly harassing the plaintiff because the plaintiff filed a grievance against him; and retaliation

claims against Toney, Henslin, Norman and Zanon based on allegations that they issued the plaintiff a conduct report and encouraged him to withdraw his grievance because the plaintiff filed a grievance against Toler. The court will dismiss the remaining defendants.

The complaint contains a request for a temporary restraining order "against every defendant," but the plaintiff has not explained what he wants the court to order; he has not said what he wants the court to restrain the defendants from doing. Dkt. No. 1 at 5. The plaintiff also states that he wants the court to order his immediate transfer to another medium-security institution. Id. He says that he believes his safety and wellbeing are not a priority of the Administration and that the Administration will continue to retaliate against him. Id. The plaintiff has not alleged that any defendant is currently threatening his safety. The court cannot grant the plaintiff the "immediate" injunctive relief he seeks. See Girtler v. Fedie, 835 F. App'x 124, 127 (7th Cir. 2020) (federal courts must accord "wide-ranging deference" to the reasonable decisions that prison officials make regarding housing, internal order and security) (citing Bell v. Wolfish, 441 U.S. 520, 547 (1979)). See also Shango v. Jurich, 681 F.2d 1091, 1102 (7th Cir. 1982) (emphasizing that prison transfers are "the business of penologists 'and are not the business of federal judges'").

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 6.

14

The court **DISMISSES** defendants Cheryl Eplett, Nikki Schwebke, Sarah Feltes and Heath Tomlin**.**

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants CO Toler, James Zanon, Emil Toney, Capt. E. Norman and Capt. Eric Henslin. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within sixty days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$341.15** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to Warden at Oshkosh Correctional Institution.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner

---

[2] The Prisoner E-Filing Program is mandatory for persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 2nd day of November, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**