ANTHONY DEWAYNE COMPTON, JR.,

                    Plaintiff,

v.                                          Case No. 22-cv-497-pp

JOSHUA TOLER, JAMES ZANON,
EMIL TONEY, CAPT. E. NORMAN
and CAPT. ERIC HENSLIN,
                    Defendants.

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES (DKT. NO. 20)**

      Plaintiff Anthony DeWayne Compton, Jr., who is incarcerated at Oshkosh Correctional Institution and is representing himself, filed this case alleging that the defendants violated his constitutional rights. The court screened the complaint under 28 U.S.C. §1915A and allowed the plaintiff to proceed on an Eighth Amendment claim against defendant Joshua Toler based on allegations that Toler touched him inappropriately when escorting the plaintiff to the showers; a retaliation claim against Toler for allegedly harassing the plaintiff because the plaintiff filed a grievance against Toler; and retaliation claims against defendants Emil Toney, Eric Henslin, E. Norman and James Zanon based on allegations that they issued the plaintiff a conduct report and encouraged him to withdraw his grievance because the plaintiff filed a grievance against Toler. Dkt. No. 11 at 13-14. The defendants filed a motion for

1

partial summary judgment, contending that the plaintiff failed to exhaust his administrative remedies as to his retaliation claims.[1] Dkt. No. 21 at 1.

## I. Facts[2]

The plaintiff is incarcerated at Oshkosh Correctional Institution. Dkt. No. 22 at ¶1. He filed three pertinent administrative complaints during the relevant time. Id. at ¶3; Dkt. No. 23 at ¶8. After the plaintiff filed his first administrative complaint (OSCI-2021-2159), he received a conduct report (151043) charging him with lying about staff in OSCI-2021-2159; he subsequently filed two more administrative complaints (OSCI-2021-4771 and OSCI-2021-5153).

### A. First Complaint: OSCI-2021-2159

On February 8, 2021, the institution complaint examiner's (ICE) office received complaint OSCI-2021-2159, in which the plaintiff alleged that Toler inappropriately touched him during an escort on February 2, 2021. Dkt. No. 22 at ¶4; Dkt. No. 23 at ¶9. The ICE recommended dismissal of the plaintiff's complaint per Executive Directive 72 XV, which states that all complaints of a sexual abuse or harassment nature shall immediately be redirected and referred for investigation. Dkt. No. 22 at ¶5; Dkt. No. 23 at ¶10. The ICE Report states in relevant part:

> Based on the nature of the allegations made in this complaint submission, and pursuant to Wis. Admin. Code DOC 310.08, this matter is immediately being referred to the Security Director for

---

[1] The defendants do not seek dismissal of the plaintiff's Eighth Amendment claim against Toler.

[2] The court includes only material, properly supported facts in this section. See Fed. R. Civ. P. 56(c).

further processing under ED 72. As such, dismissal is recommended, to take this complaint out of the ICRS for investigation purposes.

Dkt. No. 23-2 at 2. The reviewing authority dismissed OSCI-2021-2159. Dkt. No. 22 at ¶6; Dkt. No. 23 at ¶11.

B.  Conduct Report 151043

On February 16, 2021, Toney issued the plaintiff Conduct Report 151043, which charged him with lying about staff (Toler) in OSCI-2021-2159. Dkt. No. 22 at ¶17. At a disciplinary hearing held on March 1, 2021, the plaintiff was found guilty. Id. at ¶18. The plaintiff appealed the decision. Id. at ¶19. In his first appeal, dated March 2, 2021, the plaintiff claimed that the security director's interpretation of the video evidence was incorrect, the conduct report wording was a cover up and the committee never explained how the plaintiff allegedly had lied. Id. at ¶20. The defendants quote from the plaintiff's appeal:

> When hearing the ticket I pointed out to the committee that there was never any argument as to the placement of the officer's hand in the mid[dle] of my back. I also pointed out the fact that my waist starts at where my elbows are. It is seen on video that the strap is considerably lower than my elbows, and with his hand placement coming [illegible] under the belt, his finger(s) are exactly where I accused them to be. And in the ticket [illegible] says it is easy to see the officer's fingers which is not true because they are behind the strap.
>
> * * * * *
>
> The security director accused me of lying but he says on the ticket that the officers fingers are easy to see, which is false if you watch the video footage. I shouldn't have been called a liar and punished for reporting staff sexual misconduct. The Security Director's wording on the ticket attempts to discredit my story in an attempt to cover up the truth. They also never explain how I lied, bottom line

3

was I explained how his finger was inappropriately placed on my body.

Id.

On March 5, 2021, the warden issued a decision returning the case to the hearing officer for "completion/correction of the record" due to an apparent misstatement in the record.[3] Dkt. No. 24-1 at 7. In the plaintiff's second appeal, dated March 14, 2021, he stated that the guilty finding violated Wis. Admin. Code §DOC 310.08(6) because the warden did not demonstrate that the plaintiff filed his administrative complaint in bad faith. Id. at 10. The plaintiff also stated:

> I was refused nursing staff involvement because I did not SPECIFY any nursing staff by name on the witness/evidence request form. Majority of this facilities population don't know any of the nursing staff by name. It was an unfair advantage used by the hearing committee to exclude nursing staff. Toney says in the conduct report that the officers fingers are easy to see because his gloves different color of my shirt [sic], that statement was not true but relied on by the committee. CR not accurate[.] Because my shirt was so long on the video footage it was said by the committee that they couldn't tell

---

[3] The ICE Report for OSCI-2021-5153 explains the misstatement:

> On 03/05/21 Deputy Warden Zanon returned the case to the Hearing Officer for Completion/Correction of Record, noting the Hearing Officer's Decision appears to be misstatement relative to HSU Witnesses being denied in request. A review of the DOC-84 from this hearing notes that in the reason for decision that it is written "The hearing committee notes that the accused did submit a Request for Witness form but that there was nursing staff specified on the form and therefore denied." This statement was corrected on a the [sic] new DOC-84, now stating "The hearing committee notes that the accused did submit a Request for Witness form but that there was *no* nursing staff specified on the form and therefore denied."

Dkt. No. 23-4 at 2 (emphasis added).

where the officer's hand was actually placed. The nursing staff could have attested to where my waistline was in relation to my elbow. In the footage the Velcro strap is considerably lower than my elbows. My elbows is [sic] roughly where my waist line starts. With the nursing assistance in combination with his hand placement, there wouldn't be any guesses as to where his hand was positioned on my body.

Dkt. No. 24-1 at 10. Citing the appeal and the summary of the plaintiff's statement contained in the Major Disciplinary Hearing Reasons for Decision and Evidence Relief On (Dkt. No. 24-1 at 5, 7), the defendants assert that the plaintiff did not allege that he was found guilty in retaliation for his filing administrative complaints and a PREA complaint. Dkt. No. 22 at ¶21.

C.    Second Complaint: OSCI-2021-4771

On March 29, 2021, the ICE's office received complaint OSCI-2021-4771, in which the plaintiff alleged that Toler and a sergeant would not tell him how to properly place a "PREA" (Prison Rape Elimination Act) call. Dkt. No. 22 at ¶7; Dkt. No. 23 at ¶12. The ICE investigated the plaintiff's claims, the complaint was sent to the security director and for staff for follow up and dismissal was recommended. Dkt. No. 22 at ¶8; Dkt. No. 23 at ¶13. The reviewing authority dismissed the complaint on April 27, 2021 and the plaintiff did not appeal the dismissal. Dkt. No. 22 at ¶¶9-19; Dkt. No. 23 at ¶¶14-15.

D.    Third Complaint: OSCI-2021-5153

On April 5, 2021, the ICE's office received complaint OSCI-2021-5153, in which the plaintiff disagreed with the result of the disciplinary process for

Conduct Report 151043.[4] Dkt. No. 22 at ¶11; Dkt. No. 23 at ¶16. The ICE investigated the plaintiff's claims and found that he did not challenge the procedures used in the disciplinary process, the complaint was barred from the Inmate Complaint Review System (ICRS) and dismissal was recommended. Dkt. No. 22 at ¶12; Dkt. No. 23 at ¶17. The reviewing authority dismissed the complaint on May 10, 2021. Dkt. No. 22 at ¶13; Dkt. No. 23 at ¶18.

The corrections complaint examiner's (CCE) office received the plaintiff's appeal of his dismissed complaint on May 27, 2021. Dkt. No. 22 at ¶14; Dkt. No. 23 at ¶19. The CCE found that the plaintiff's appeal challenged the sufficiency of evidence in his finding of guilt but did not raise any procedural errors, and recommended dismissal of the appeal. Dkt. No. 22 at ¶14; Dkt. No. 23 at ¶19. The Office of the Secretary dismissed the appeal on July 16, 2021. Dkt. No. 22 at ¶15; Dkt. No. 23 at ¶20. The secretary's decision states in part, "The Warden has dismissed conduct report under her authority in DOC 303.[5] The issue raised is now moot." Dkt. No. 23-4 at 9.

The defendants assert that the plaintiff did not submit any administrative complaints in which he alleged retaliation for filing grievances or making a PREA complaint. Dkt. No. 22 at ¶16.

---

[4] The plaintiff states that he never received any document stating that the ICE's office acknowledged this complaint. Dkt. No. 33 at ¶11.

[5] The plaintiff filed a memo from Warden Eplett stating that she dismissed Conduct Report 15103 based on her authority under Wis. Admin. Code §DOC 303.89. Dkt. No. 34-1 at 29-30.

## II. Analysis

### A. <u>Summary Judgment Standard</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see</u> <u>also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986); <u>Ames v. Home Depot U.S.A., Inc.</u>, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." <u>See</u> <u>Anderson</u>, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

7

B. <u>The Exhaustion Requirement</u>

The defendants contend that the plaintiff failed to exhaust administrative remedies as to his retaliation claims because he failed to raise retaliation in any administrative complaint or conduct report appeal. Dkt. No. 21 at 4. The plaintiff argues that the defendants' retaliatory actions caused administrative remedies to be unavailable to him. Dkt. No. 32 at 1-2. According to the plaintiff, he "did in fact fail to raise retaliation in any inmate complaint or conduct report appeal, but [the plaintiff] did not forfeit the retaliation claim because he moved for an Order of Protection in order to continue with his retaliation claim." <u>Id.</u> He states that he "petitioned Winnebago County Court for an Order of Protection citing fear of retaliation, and need for protection in order to exhaust without any further retaliation." <u>Id.</u> at 6. The plaintiff states that he believed he would be given more segregation time if he continued to write more grievances explaining how the defendants mishandled the sexual misconduct claim and retaliated against him. <u>Id.</u> According to the plaintiff, the fact that the defendants punished him with segregation time "for whatever they considered to be 'lying on an employee,' is what [he] feared the most, and he was not willing to take that risk again." <u>Id.</u> at 6-7. The plaintiff states that "he had been sexually assaulted, intimidated, manipulated, and unjustly punished as a result [of] reporting this sexual misconduct situation, which made the normal grievance procedure unavailable to [him] because of the defendants' retaliatory actions." Dkt. No. 33 at ¶16.

8

The Prison Litigation Reform Act (PLRA) states that an incarcerated individual cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); see also Woodford v. Ngo, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires that an incarcerated person comply with the rules applicable to the grievance process at his institution. Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The objective of §1997e(a) is to permit the institution's "administrative process to run its course before litigation begins." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006) (quoting Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005)); see also Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). The Seventh Circuit applies a "strict compliance approach to exhaustion" and expects incarcerated individuals to adhere to "the specific procedures and deadlines" established by the institution's policy. Dole, 438 F.3d at 809; see also Hernandez v. Dart, 814 F.3d 836, 842 (7th Cir. 2016) (citations omitted). Because exhaustion is an affirmative defense, the defendants bear the burden of proving that the plaintiff failed to exhaust. Pavey v. Conley, 544 F.3d 739, 740-41 (7th Cir. 2008) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)).

The "Inmate Complaint Review System" (ICRS) in the Wisconsin prisons is the administrative remedy available to individuals with complaints about

9

prison conditions or the actions of prison officials. Wis. Admin. Code §DOC 310.01(2)(a). Before an incarcerated individual may commence a civil action, he must exhaust all administrative remedies the Department of Corrections (DOC) "has promulgated by rule." Wis. Admin. Code §DOC 310.05. The ICRS is available for individuals to "raise issues regarding policies, living conditions, or employee actions that personally affect the inmate or institution environment." Wis. Admin. Code §DOC 310.06(1).

To use the ICRS, an incarcerated person must file a complaint with the ICE within fourteen days after the occurrence giving rise to the complaint. Wis. Admin. Code §DOC 310.07(2). After reviewing and acknowledging each complaint in writing, the ICE either rejects the complaint or sends a recommendation to the "appropriate reviewing authority," who may recommend that the complaint be affirmed or dismissed in whole or in part. Wis. Admin. Code §§DOC 310.10(9) & 310.10(12). Within fourteen days after the date of the decision, an incarcerated individual may appeal the reviewing authority decision to the corrections complaint examiner (CCE). Wis. Admin. Code §DOC 310.09(1). The CCE reviews the appeal and makes a recommendation to the secretary of the DOC. Wis. Admin. Code §DOC 310.12(9). The secretary affirms or dismisses the CCE's recommendation or returns the appeal to the CCE for further investigation. Wis. Admin. Code §DOC 310.13(2).

The court allowed the plaintiff to proceed on retaliation claims against Toney, Henslin, Normal and Zanon based on his allegations that that Toney and Henslin issued him Conduct Report 151043 for lying about staff, and that

10

Norman and Zanon encouraged him to withdraw his grievance against Toler or to say that he was mistaken about it. Dkt. No. 11 at 10. The court allowed the plaintiff to proceed on a retaliation claim against Toler based on allegations that Toler verbally harassed him, refused him opportunities to shower or go to recreation, threatened to withhold a meal because the plaintiff wouldn't verbally acknowledge him and, when Norman moved the plaintiff to the opposite wing of the RHU (where Toler did not regularly work), Toler showed up at his door and continued to harass him. Id. at 10-11.

The plaintiff acknowledges that he did not file an administrative complaint raising his retaliation allegations against the defendants. But he contends that administrative remedies were not available to him because he was afraid that he would be given more segregation time if he complained.

An incarcerated individual need only exhaust "available" administrative remedies. Ebmeyer v. Brock, 11 F.4th 537, 542 (7th Cir. 2021) (citing Hernandez v. Dart, 814 F.3d 836, 842 (7th Cir. 2016)). "Administrative remedies are primarily 'unavailable' to prisoners where 'affirmative misconduct' prevents prisoners from pursuing administrative remedies." Id. (citing Hernandez, 814 F.3d at 842)); see also Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006). For example, administrative remedies are unavailable when an officer tells an incarcerated individual that he cannot file a grievance when in fact he can do so. Ebmeyer, 11 F.4th 537 at 542-43 (citing Thomas v. Reese, 787 F.3d 845, 847-48 (7th Cir. 2015)). Remedies also are unavailable when a plaintiff presents evidence that prison personnel denied him grievance forms,

11

threatened him and solicited other incarcerated persons to attack him in retaliation for filing grievances. Id. at 543 (citing Kaba v. Stepp, 458 F.3d 678, 680, 686 (7th Cir. 2006)); see also Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004) (remedies unavailable where prison personnel refused plaintiff individual access to required grievance forms).

When an incarcerated individual claims that the grievance process is unavailable because he fears reprisal, he must demonstrate that a person of "ordinary firmness" would have been deterred from filing a grievance in the circumstances alleged. Ebmeyer, 11 F.4th at 543 (citing Schultz v. Pugh, 728 F.3d 619, 621 (7th Cir. 2013); Kaba, 458 F.3d at 684-85). This is an objective standard. Id. While the plaintiff states that he didn't raise the issue of retaliation because he feared spending time in segregation, he does not allege that anyone threatened to place him in segregation if he complained about the alleged retaliation. The plaintiff bases his fear of having to spend more time in segregation on his alleged retaliatory conduct report for lying about staff. After the plaintiff received the conduct report, however, he received a disciplinary hearing and, after he was found guilty, he was sentenced to ten days disciplinary segregation. While the plaintiff understandably didn't want to spend more time in segregation, he has not shown that a person of ordinary firmness would have been dissuaded from filing a grievance alleging retaliation.[6] The plaintiff filed grievances referencing some of the defendants'

---

[6] The plaintiff was housed in Green Bay's restrictive housing unit (RHU) when the alleged touching incident with Toler took place on February 2, 2021. Dkt.

12

conduct during the time when he says he feared raising the issue of retaliation (OSCI-2021-4771, OSCI-2021-5153). In addition, the administrative grievances the plaintiff filed were not reviewed by the defendants, but by the ICE office; the plaintiff knew or should have known this, based on his experience with filing grievances. The plaintiff had a "clear route" around the defendants to file grievances raising his retaliation allegations. See Ebmeyer, 11 F.4th at 543.

The ICRS was available to the plaintiff, but he failed to exhaust the grievance process on his retaliation claims. The court will grant the defendants' motion for partial summary judgment, dismiss his retaliation claims and dismiss defendants Zanon, Toney, Norman and Henslin.[7]

### III. Conclusion

The court **GRANTS** the defendants' motion for partial summary judgment on exhaustion grounds. Dkt. No. 20. The court **ORDERS** that the plaintiff's retaliation claims are **DISMISSED**. The court **ORDERS** that

---

No. 1 at 1. In the complaint, the plaintiff alleged that he had been sent to the RHU for thirty days for disruptive conduct. Id.

[7] Under the Wisconsin Administrative Code, an individual may raise issues through the ICRS regarding disciplinary actions only after exhausting the disciplinary appeal process under Ch. DOC 303. Wis. Admin. Code §310.06(2)(b). Under §DOC303.82, the warden's decision is final regarding the sufficiency of the evidence for an appeal of a disciplinary decision. Wis. Admin. Code §303.82(4). An incarcerated individual may appeal claims of procedural error under §DOC 310.06(2). The plaintiff was required to grieve his retaliation claims because they are not alleged to have been related to his conduct report such that they challenged the factual basis of the conduct report. See Rivera v. Lindmeier, No. 13-C0-124, 2013 WL 6806188, at **2-3 (E.D. Wis. Dec. 20, 2013). Even if the retaliation issue was related to the conduct report, the plaintiff would have had to raise the issue in his appeal of the conduct report, which he did not do.

13

defendants James Zanon, Emil Toney, Captain E. Norman and Captain Eric Henslin are **DISMISSED**.

The court **ORDERS** that the deadline for the completion of discovery is **December 8, 2023** and the deadline for the parties to file motions for summary judgment on the merits is **January 10, 2024**.

Dated in Milwaukee, Wisconsin this 12th day of September, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**