UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANTHONY DEWAYNE COMPTON,

                    Plaintiff,

        v.                                Case No. 22-cv-497-pp

JOSHUA TOLER

                    Defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 47), DENYING PLAINTIFF'S MOTION FOR EXTENSION OF TIME (DKT. NO. 65) AND DISMISSING CASE**

Plaintiff Anthony DeWayne Compton, Jr., who is incarcerated at Oshkosh Correctional Institution and is representing himself, filed this case alleging that several defendants violated his constitutional rights. The court screened the complaint under 28 U.S.C. §1915A and allowed the plaintiff to proceed on an Eighth Amendment claim against defendant Joshua Toler based on allegations that Toler touched him inappropriately when escorting the plaintiff to the showers; a retaliation claim against Toler for allegedly harassing the plaintiff because the plaintiff had filed a grievance against Toler; and retaliation claims against former defendants Emil Toney, Eric Henslin, E. Norman and James Zanon based on allegations that, in retaliation for the grievance the plaintiff had filed against Toler, they had issued the plaintiff a conduct report and encouraged him to withdraw his grievance. Dkt. No. 11 at 13-14. On September 12, 2023, the court granted the defendants' motion for partial summary judgment on exhaustion grounds as to the plaintiff's

1

retaliation claims; the court dismissed defendants Toney, Zanon, Henslin and Norman. Dkt. No. 36 at 13-14.

Defendant Toler has filed a motion for summary judgment on the merits. Dkt. No. 47. The plaintiff has filed a motion for an extension of time to file a response to the defendant's reply in support of his motion for summary judgment. Dkt. No. 65. This order grants the defendant's motion for summary judgment, denies the plaintiff's motion for an extension of time and dismisses the case.

## I.    Facts[1]

The plaintiff alleges that on February 2, 2021, during an escort at Oshkosh Correctional Institution, the defendant touched him inappropriately by "putting his finger in the crack of [the plaintiff's] rear end." Dkt. No. 49 at ¶3.

### A.    Housing and Security

At Oshkosh, individuals housed in the general population units can leave their cells and/or housing units for recreation, library, religious services and education. Id. at ¶4. They also can use the dayrooms on the unit, take showers during dayroom time, make phone calls and sign themselves in/out of the housing units. Id. at ¶5. Individuals housed in the general population units generally conduct these activities without escort or restraint. Id.

---

[1] The court includes only material, properly supported facts in this section. See Fed. R. Civ. P. 56(c).

2

Individuals housed in the Restrictive Housing Unit (RHU) must remain in their cells unless a staff member authorizes them to leave it for activities. Id. at ¶6. Any time an incarcerated individual is out of his cell in RHU, a staff member must escort him using handcuffs and waist belts. Id. Staff members use these types of restraints in the RHU to prevent movement, to keep incarcerated individuals under staff control and to ensure safety. Id. Additional restraints such as leg cuffs or two-person escorts may be necessary depending on the incarcerated individual's behavior and/or the situation. Id.

B. February 2, 2021 Escort

On February 2, 2021, the defendant was working first shift in the RHU and the plaintiff was housed in the RHU because he was serving disciplinary separation sanctions for a conduct report. Id. at ¶¶9-10. That day, the plaintiff was scheduled to use the unit shower and the defendant escorted him there. Id. at ¶12. Because the plaintiff was housed in the RHU, the restraints required for the plaintiff during this escort were handcuffs and a waist belt. Id. at ¶¶11, 13. A waist belt is a mechanical restraint consisting of a vinyl wrap/belt with Velcro connectors that goes around the incarcerated person's midsection and connects to handcuffs in the front. Id. at ¶14. When utilizing this midsection wrap restraint, the corrections officer must maintain a hands-on escort and control over the incarcerated individual's movements. Id. at ¶15.

There is video footage of the defendant escorting the plaintiff from his cell to the showers on February 2, 2021. Id. at ¶16. The escort lasts forty-one seconds. Id.; Exh. 1008. When the video begins, the defendant can be seen in

3

the video frame of "N Tier Facing Control" outside the plaintiff's cell door. Dkt. No. 49 at ¶17; Exh. 1008, at 9:10:34. The defendant applied handcuff restraints to the plaintiff's wrists and attached the tether through the trap door; the plaintiff placed his hands back into the cell prior to his cell door opening. Dkt. No. 49 at ¶18; Exh. 1008 at 9:10:34.[2] The RHU control bubble unlocked the cell door and it slid open. Dkt. No. 49 at ¶19; Exh. 1008 at 9:10:39. The plaintiff exited his cell, facing the defendant. Dkt. No. 49 at ¶20; Exh. 1008 at 9:10:42.

After the plaintiff came out of his cell, the defendant wrapped a restraint belt around the plaintiff's midsection, over his shirt, as the plaintiff exited his cell door. Dkt. No. 49 at ¶21; Exh. 1008 at 9:10:43.[3] The defendant moved behind the plaintiff to secure the restraint. Dkt. No. 49 at ¶22; Exh. 1008 at 9:10:45. The defendant then moved in front of the plaintiff to unlock the tether from the handcuffs so that they could walk to the next area. Dkt. No. 49 at ¶23; Exh. 1008 at 9:10:53. The plaintiff turned to face away from the camera, and the defendant placed his hand onto the restraint belt against the plaintiff's back.[4] Dkt. No. 49 at ¶24; Exh. 1008 at 9:11:02. The defendant's blue-gloved

---

[2] The plaintiff says that he disagrees with the sequence of the application of the handcuffs and placement of the tether. Dkt. No. 61 at ¶18. This disagreement does not amount to a material, factual dispute.

[3] The plaintiff says that the defendant wrapped the restraint belt around the plaintiff's buttocks. Dkt. No. 61 at ¶21. The video does not support the plaintiff's assertion.

[4] The plaintiff disagrees with this statement and says that from the time the defendant grabbed the restraint until the time he took the restraint from

4

hand can be seen holding the belt and the plaintiff's orange shirt can be seen both above and below the waist/restraint belt. Dkt. No. 49 at ¶25; Exh. 1008 at 9:11:02.

The defendant escorted the plaintiff down the hallway; the defendant's hand does not move from the back of the plaintiff's restraint belt; the restraint belt does not move and the plaintiff's clothing does not move. Dkt. No. 49 at ¶26; Exh. 1008 at 9:11:02 - 9:11:08. The defendant then can be seen entering the video frame of "South Dayroom," escorting the plaintiff through the hallway opening. Dkt. No. 49 at ¶27; Exh. 1008 at 9:11:09. The defendant escorted the plaintiff to another doorway with his blue-gloved hand still on the back of the restraint belt. Dkt. No. 49 at ¶28; Exh. 1008 at 9:11:09 - 9:11:13. The defendant removed the restraint belt, which came off completely. Dkt. No. 49 at ¶29; Exh. 1008 at 9:11:16.

The plaintiff stepped into the doorway of the shower room/stall while still facing the defendant, and the defendant closed the door once the plaintiff was inside the stall. Dkt. No. 49 at ¶30; Exh. 1008 at 9:11:17. The defendant removed the plaintiff's handcuff restraints, which remained connected to the restraint belt through the trap door. Dkt. No. 49 at ¶31; Exh. 1008 at 9:11:17. The restraint belt can be seen being passed through the plaintiff's shower stall trap door. Dkt. No. 49 at ¶32; Exh. 1008 at 9:11:30. The defendant left the front of the shower stall. Dkt. No. 49 at ¶33; Exh. 1008 at 9:11:34.

_____

around the plaintiff, the defendant's hand was in the area of the plaintiff's buttocks. Dkt. No. 61 at ¶24; Exh. 1008 at 9:11:11-9:11:17.

5

The defendant's hand can be viewed on the video throughout the entire escort. Dkt. No. 49 at ¶34. It does not move beyond holding the restraint wrap against the plaintiff's back. Id. The plaintiff's shirt can be seen underneath the waist restraint—both above and below the waist restraint—throughout the entire escort. Id.

C.     Plaintiff's Deposition Testimony

The plaintiff testified at his deposition that before the alleged incident, he had neither positive nor negative interactions with the defendant. Id. at ¶35. He testified that on February 2, 2021, an officer came to the plaintiff's door to take him to the shower because he was in "Seg" and moved under escort only. Id. at ¶36. The plaintiff testified that the officer put the Velcro waist strap around his waist and that when the officer grabbed the Velcro waist strap, his finger went in between the plaintiff's butt crack. Id. at ¶37. The plaintiff testified that from the time he started walking, the officer's finger stayed in the same position the entire time. Id. at ¶38. The plaintiff testified that the finger did not penetrate his anus. Id. at ¶39.

The plaintiff testified that he had a t-shirt on, that the belt went over the t-shirt and the finger was on top of the t-shirt. Id. at ¶40. The plaintiff testified that he was wearing pants which were sagging down as he walked. Id. at ¶41. He testified that the defendant did not do anything to hold up or pull down the plaintiff's pants. Id. at ¶42. The plaintiff testified that upon arrival at the shower area, he was strapped to the door, and the waist strap was taken off, leaving him handcuffed to a tether and the door; he testified that he then went

6

into the shower and was uncuffed. Id. at ¶43. He testified that there was nothing said by the plaintiff or the defendant during the uncuffing process. Id. at ¶44.

The plaintiff watched the video during his conduct report hearing. Id. at ¶45. He conceded that the defendant's hand is positioned on the strap. Id. at ¶46. He expressed the belief, however, that the waist belt was lower than normal, "hugging the top where [the plaintiff's] waist and buttocks begin." Id. at ¶47. The plaintiff testified that nothing happened other than what was captured on the video. Id. at ¶48.

D.     Complaint and PREA Investigation

On February 7, 2021, the plaintiff submitted an inmate complaint alleging that the defendant had inappropriately touched him while escorting him to the showers on February 2, 2021. Id. at ¶49. The institution complaint examiner's office referred the complaint to the security director for further investigation. Id. at ¶50. An investigation into the defendant's actions was initiated for potential Prison Rape Elimination Act (PREA) violations. Id. at ¶51.

On February 16, 2021, the plaintiff received a conduct report from the security director for lying about an employee. Id. at ¶52. The security director reviewed the camera footage and determined that the allegations leveled by the plaintiff were not substantiated by the video evidence.[5] Id. On March 1, 2021,

---

[5] The plaintiff states that the video footage used during the disciplinary hearing was of higher quality than the footage the defendant provided the plaintiff during discovery. Dkt. No. 61 at ¶52.

the plaintiff had a major disciplinary hearing where the hearing officer affirmed the security director's findings that the plaintiff's allegations were untrue based on the video evidence. Id. at ¶53. The plaintiff was found guilty of lying about an employee and received a ten-day disciplinary separation disposition.[6] Id.

The defendant was not interviewed for the Employee/PREA investigation; the investigator determined it was unnecessary because the video refuted the allegation. Id. at ¶54. On March 22, 2021, the PREA investigation was completed. Id. at ¶55. The disposition of the case was "unfounded," meaning that the allegation was investigated and determined either not to have occurred or not to constitute either sexual abuse or harassment. Id. at ¶56. The defendant did not receive any discipline in response to the plaintiff's allegations. Id. at ¶57.

## II. Analysis

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[6] The plaintiff states that on July 16, 2021, Warden Cheryl Eplett used her authority to dismiss the plaintiff's conduct report for undisclosed reasons. Dkt. No. 61 at ¶53. The plaintiff cites to "Dkt. No. 32, Exhibit 1009" in support of this assertion. Dkt. No. 62 at ¶38. Docket Number 32, which is the plaintiff's brief opposing the defendants' motion for summary judgment on exhaustion grounds, does not reference or include an Exhibit 1009. However, the plaintiff attached an Exhibit 1009 to Docket Number 34, which is his declaration supporting his opposition to the defendants' motion for summary judgment on exhaustion grounds. Dkt. No. 34-1 at 1-2. Exhibit 1009 is a memo to the plaintiff from Eplett stating, "[i]n light of mitigating factors, I am altering the disposition on CR#001511043 to Dismissed in full." Id. at 2. Eplett's dismissal of the disposition on the plaintiff's conduct report is not relevant to the resolution of the plaintiff's Eighth Amendment claim.

judgment as a matter of law." Federal Rule of Civil Procedure 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B.    Discussion

The defendant contends that the plaintiff's Eighth Amendment claim must be dismissed because the video footage of the escort refutes the plaintiff's allegations. Dkt. No. 48 at 5. He states that the undisputed evidence shows that the defendant did nothing more than escort the plaintiff to the shower. Id.

9

at 8. The defendant also contends that he is entitled to qualified immunity. Id. at 9.

The plaintiff responds that the court must deny the defendant's motion for summary judgment because the video footage refutes the defendant's version of the incident. Dkt. No. 60 at 3. The plaintiff asserts that the defendant placed his hand at the plaintiff's buttocks, not at his back, and that the defendant "subtly slid[] his finger into the crack of [the plaintiff's] rear end, through his loose clothing, while grabbing and holding his restraint, and to add insult to injury he kept his finger *in* [the plaintiff's] butt-crack for the duration of the escort while subtly playing it off as if he was just holding the restraint." Id. at 8. Dkt. No. 61 at ¶29. The plaintiff also disputes that the defendant is entitled to qualified immunity. Dkt. No. 60 at 10.

The Eighth Amendment protects incarcerated individuals from cruel and unusual punishments. See generally Wilson v. Seiter, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). In the context of a claim of excessive or unwanted force, the plaintiff must show both that (1) "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation," and (2) "'the officials act[ed] with a sufficiently culpable state of mind.'" Hudson v. McMillian, 503 U.S. 1, 8 (1992) (quoting Wilson, 501 U.S. at 298, 303). "An unwanted touching . . . intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights whether or not the force exerted by the

10

assailant is significant." <u>Washington v. Hively</u>, 695 F.3d 641, 643 (7th Cir. 2012).

If the only evidence presented to the court had been the parties' conflicting statements about the incident, there might be a genuine dispute of material fact for a jury to decide. If a jury were to credit the plaintiff's version— that the defendant deliberately placed his finger in the crack of the plaintiff's rear end—there would probably have been a factual dispute because the defendant denies that he sexually assaulted the plaintiff.

But the defendant has provided a video of the incident. Contrary to the plaintiff's assertion that the video refutes the defendant's version of the events, the video contradicts *the plaintiff's* version of the events. The Supreme Court has held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Scott v. Harris</u>, 550 U.S. 372, 378-81 (2007). The Seventh Circuit has held that not every movement must be captured on a video for a court to find that it blatantly contradicts a particular version. <u>See</u> <u>Boyd v. Pollard</u>, 621 F. App'x 352, 356 (7th Cir. 2015) (stating, "We conclude that no juror who viewed the video could reasonably conclude—given the professional behavior of the guards and minor injury sustained by Boyd—that the guards, when outside the camera's view, attacked Boyd.") The Seventh Circuit reemphasized in <u>Boyd</u> that summary judgment is improper only if a

jury reasonably could find excessive force after reconciling the entirety of the plaintiff's assertions with the video evidence. Id.

In this case, the plaintiff was housed in the RHU, which required that the defendant escort the plaintiff to the shower using a waist belt and handcuffs and maintain a hands-on escort on the plaintiff. The video shows that the defendant held onto the back of the plaintiff's waist belt during the short walk from the plaintiff's cell to the shower, then removed the waist belt. The waist belt was positioned over the plaintiff's clothes and the defendant simply held onto the belt. The video does not support the plaintiff's assertion that the defendant placed the waistbelt low on the plaintiff's body such that the defendant's finger went into the crack of the plaintiff's buttocks. Even if the video did show this, the record contains no evidence that the defendant purposefully touched the plaintiff in an effort to humiliate the plaintiff or gratify himself. See Whitman v. Nesic, 368 F.3d 931, 934 (7th Cir. 2014); see also Smith v. Turner, 834 F. App'x 261, 263-64 (7th Cir. 2021) (video did not show that officer's actions were punitive or excessive in relation to legitimate purpose of search and the undisputed evidence showed that any touching of genitals was incident to proper search).

A reasonable factfinder could not conclude that the defendant violated the plaintiff's constitutional rights, and the court will grant the defendant's motion for summary judgment. Because the court has granted the defendant's

12

motion on the merits, it will not consider the defendant's argument that he is entitled to qualified immunity.[7]

## III. Conclusion

The court **GRANTS** the defendants' motion for summary judgment. Dkt. No. 47.

The court **DENIES** the plaintiff's motion for extension of time. Dkt. No. 65.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks

---

[7] After the defendant's motion for summary judgment was fully briefed, the plaintiff filed a motion for an extension of time to file a response to the defendant's reply—effectively a sur-reply. Dkt. No. 65. The plaintiff subsequently filed his response. Dkt. No. 66. This court's local rules do not provide for sur-replies. The defendant did not propose new facts or evidence in his reply that would warrant a sur-reply from the plaintiff. See Slaughter v. Lutsey, Case No. 17-C-1448, 2019 WL 11502919, at *1 (E.D. Wis. June 14, 2019), aff'd, 805 F. App'x 424 (7th Cir. 2020) (citations omitted). The court will deny the plaintiff's motion for extension of time to file a sur-reply. The court did not consider the sur-reply when deciding the motion for summary judgment.

13

to proceed on appeal without prepaying the appellate filing fee, he must file a motion *in this court*. <u>See</u> Fed. R. App. P. 24(a)(1). The plaintiff may be assessed a "strike" by the Court of Appeals if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. <u>Id.</u>

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. <u>See</u> Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. <u>See</u> Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this __ day of January, 2025.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**

14